UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| CHURCHILL DOWNS, INC., <br><br> Plaintiff, <br><br> v. <br><br> NLR ENTERTAINMENT, LLC AND NICHOLAS L. RIBIS, <br><br> Defendants/Third-Party Plaintiffs, <br><br> v. <br><br> WILLIAM CARSTANJEN, <br><br> Third-Party Defendant. | Civ. No. 14-3342 (KM) (MAH) <br><br> OPINION |

**KEVIN MCNULTY, U.S.D.J.:**

On February 25, 2014, plaintiff Churchill Downs, Inc. ("CDI") filed suit against defendants NLR Entertainment, LLC ("Entertainment LLC") and Nicholas Ribis, Entertainment LLC's purported principal. CDI alleged (1) a breach of contract claim against Entertainment LLC that arose from an agreement that was executed in 2013; and (2) a fraud claim against Ribis for making various representations to CDI regarding the status of negotiations with a third party.

On March 6, 2017, this Court entered an order granting CDI's motion for summary judgment as to its breach of contract claim against Entertainment LLC. CDI's fraud claim against Ribis was dismissed. A final judgment in the amount of $2,676,763.70 was entered against Entertainment LLC on April 4, 2017.

Now it turns out that Entertainment LLC, the judgment debtor, does not exist and never did. Before the court is CDI's motion to modify the judgment

1

under Federal Rule of Civil Procedure 60(b) to impose liability against NLR Ventures ("Ventures LLC") and Ribis individually.

## I. Background

I relate the facts that are pertinent to resolving this motion only. On August 3, 2013, CDI and Ribis executed a "Binding Term Sheet" ("Term Sheet"). (ECF no. 90-3). Ribis executed the agreement on behalf of NLR Acquisitions, LLC ("Acquisitions LLC"), a "wholly owned subsidiary of NLR Entertainment, LLC." (*Id.*).

Pursuant to the term sheet, CDI was to provide online gambling services to Showboat Atlantic City Hotel and Casino ("Showboat"), once Acquisitions/Entertainment LLC had purchased Showboat. (*Id.*) CDI was to make an initial payment of $2.5 million dollars, which eventually was supposed to be credited towards a $10 million dollars rights fee. (*Id.*). In the event that Acquisitions/Entertainment LLC failed to purchase Showboat, then it would be required to "repay the $2.5 million dollars." (*Id.*).

Thereafter, on September 4, 2013, Acquisitions LLC and CDI entered into a License and Operating Agreement ("License Agreement"). (ECF no. 90-4). In contrast to the Term Sheet, the only party on Ribis's side of the License Agreement was Acquisitions LLC (which had been identified earlier as a subsidiary of Entertainment LLC). The terms of the License Agreement were substantially similar to the Term Sheet.

On August 5, 2013, two days after the Term Sheet but before the execution of the License Agreement, CDI wired $2.5 million dollars to a TD bank account. The bank account was in Ribis's name, which would have been evident from the wiring instructions provided to CDI. (ECF no. 92-7). Post-judgment discovery revealed that in August 2013, after CDI had wired the money to Ribis's personal bank account, Ribis made a series of transfers to his wife, various country clubs, and utility services. (ECF nos. 90-3, 90-14, 90-15). He further transferred approximately $1.35 million to Ventures LLC, another entity controlled by him. (ECF nos. 90-16, 90-17, 90-18).

2

CDI brought this against Ribis and Entertainment LLC as defendants, when Acquisitions/Entertainment LLC failed to acquire Showboat and did not return the $2.5 million dollars. (ECF no. 1-1).[1] In 2015, defendants produced documents in discovery related to Acquisitions LLC's formation, including Acquisitions LLC's certificate of formation, its LLC agreement, and certificate of good standing. (ECF nos. 92-2, 92-3, 92-5). Those documents revealed that Acquisitions LLC was not formed until December 12, 2013, months after the parties had executed the Term Sheet and License Agreement. (*Id.*). When asked during his deposition on May 26, 2016 when Entertainment LLC and Acquisitions LLC were formed, Ribis said that he did not know. (ECF no. 90-7, at 41:14-12). He further testified that he did not know whether Entertainment LLC or Acquisitions LLC still existed at the time of the deposition. (*Id.* at 42:6-11).

On March 6, 2017, summary judgment was granted to CDI on its breach of contract claim. Entertainment LLC breached the contract, I found, when it failed to return CDI's $2.5 million dollars. (ECF nos. 69, 71 (corrected opinion)). A final judgment in the amount of $2,676,763.70 was entered on April 4, 2017. (ECF no. 76).

Thereafter, CDI sought post-judgment discovery in aid of execution. On April 19, 2017, CDI served subpoenas on various NLR entities controlled by Ribis, including Ventures LLC (ECF no. 78-5); Acquisitions LLC (ECF no. 78-6); NLR Resort Management Co., LLC (ECF no. 78-7); and NLR Resorts International, LLC (ECF no. 78-8). CDI also served subpoenas on TD Bank (ECF no. 78-10) and on The Bancorp Bank (ECF no. 78-9), where, Ribis testified, the NLR entities maintain their accounts. Last, CDI served interrogatories on Ribis, seeking information about Ribis's own assets. It was during this post-judgment discovery that the Department of State for the State of Delaware advised CDI's counsel that it had no record of any entity named

---

[1] There is no further explanation in CDI's motion, or in the record as presented, as to the status of Acquisitions LLC or why it was not named as a defendant.

3

"NLR Entertainment LLC" ever being formed under the laws of the State. (ECF no. 90-8).

On May 3, 2017, defendants moved to quash the subpoenas served on the four "non-party" NLR entities. Defendants also sought a protective order to strike the interrogatories served on Ribis, a non-judgment debtor. TD Bank apparently produced some responsive records anyway, which rendered part of the motion moot.

On December 20, 2017, the Magistrate Judge issued a decision on the motion to quash, which was granted in part and denied in part. (ECF no. 89). Noting that there was no evidence that the 2013 transfers were made for the purpose of evading a judgment (which was not entered until 2017), the court granted the motion to quash the subpoenas on the non-party NLR entities. It also granted the motion to strike the interrogatories served on Ribis.

Thereafter, on February 23, 2018, CDI filed this motion to modify the judgement under Rule 60(b).

## II. Standard

Federal Rule of Civil Procedure Rule 60(b) authorizes the Court to issue relief from a final judgment, order, or proceeding. "The general purpose of Rule 60(b) . . . is to strike a proper balance between the conflicting principles that litigation must be brought to an end and that justice must be done." *Coltec Indus., Inc. v. Hobgood*, 280 F.3d 262, 271 (3d Cir. 2002) (citing *Boughner v. Sec'y of Health, Educ., & Welfare*, 572 F.2d 976, 977 (3d Cir. 1978)). The Rule provides as follows:

> On motion and just terms, the court may relieve a party or its legal representative from final judgment, order, or proceeding for the following reasons:
>
> > (1) mistake, inadvertence, surprise, or excusable negligence;
> > (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);
> > (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;
> > (4) the judgment is void;

4

> (5) the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or
>
> (6) any other reason that justified relief.

The movant under Rule 60(b) "bears a heavy burden." *Plisco v. Union R. Co.*, 379 F.2d 15, 17 (3d Cir. 1967), *cert. denied*, 389 U.S. 1014 (1967). Rule 60(b) motions are "extraordinary relief which should be granted only where extraordinary justifying circumstances are present." *Id.*; *see also Moolenaar v. Gov't of the Virgin Islands*, 822 F.2d 1342, 1346 (3d Cir. 1987).

### III. Discussion

CDI seeks to modify the final judgment based on facts that it knows now, but did not know at the time of judgment. First, CDI states that the contracting entity (and now judgment debtor), Entertainment LLC, did and does not exist. Second, it cites Ribis's use of the funds to pay personal expenses and transfer of $1.35 million to Ventures LLC. CDI seeks to modify the final judgment to impose liability on Ribis personally and upon Ventures LLC.

Rule 60(b)(3) provides for relief from a final judgment where there has been fraud, "misrepresentation, or other misconduct of an adverse party."[2] Under this provision, "the movant must establish that the adverse party engaged in fraud or other misconduct, and that this conduct prevented the moving party from fully and fairly presenting his case." *Stridiron v. Stridiron*, 698 F.2d 204, 207 (3d Cir. 1983) (citing *Rozier v. Ford Motor Co.*, 573 F.2d 1332, 1341 (5th Cir.1978)). "[R]elief under Rule 60(b)(3) may be warranted, even though the newly disclosed evidence may not change the result, if such evidence 'would have made a difference' in advancing the moving party's claim." *Floorgraphics Inc. v. News Am. Mktg. In-Store Servs., Inc.*, 434 F. App'x 109, 111 (3d Cir. 2011) (quoting *Seaboldt v. Pennsylvania RR. Co.*, 290 F.2d 296, 299-300 (3d Cir. 1961)). Rule 60(b)(3) "is aimed at judgments which were unfairly obtained, not at those which are factually incorrect." *Rozier*, 573 F.2d

---

[2] A motion made pursuant to Rule 60(b)(3) is timely if it is filed within a year after judgment was entered. Fed. R. Civ. P. 60(c)(1). CDI's motion was filed timely.

5

at 1339. "'[I]n order to sustain the burden of proving fraud and misrepresentation under Rule 60(b)(3), the evidence must be clear and convincing.'" *Floorgraphics*, 434 F. App'x at 111 (alteration added) (quoting *Anderson v. Cryovac, Inc.*, 862 F.2d 910, 923 (1st Cir. 1988), *remanded to*, *Anderson v. Beatrice Foods Co.*, 127 F.R.D. 1 (D. Mass. 1989), *aff'd*, 900 F.2d 388 (1st Cir. 1990)).

CDI contends that it was prevented from fully and fairly presenting its case, and was misled into obtaining a judgment against a nonexistent LLC. Ribis, it says, falsely stated that Entertainment LLC was a genuine entity formed under the laws of the state of Delaware in three court filings: (1) an affidavit submitted to the Court in support of a motion to transfer venue (ECF no. 90-5 (affirming that Entertainment LLC is "a Delaware Limited Liability Company")); (2) Entertainment LLC's corporate disclosure statement that was submitted pursuant to Rule 7.1 (ECF no. 11-1); and (3) Ribis's answer to the complaint (ECF no. 11, ¶3 (admitting that Entertainment LLC is a Delaware limited liability company)).

These facts, I find, at a minimum fit the definition of "misconduct" under Rule 60(b)(3). Relief under this Rule is not limited to "fraud," but also encompasses conduct that amounts to a misrepresentation or "misconduct by an opposing party." Most courts have taken a liberal view with the definition of "misconduct." *See, e.g., Anderson*, 862 F.2d at 923.

> "Misconduct" does not demand proof of nefarious intent or purpose as a prerequisite to redress. For the term to have meaning in the Rule 60(b)(3) context, it must differ from both "fraud" and "misrepresentation." Definition of this difference requires us to take an expansive view of "misconduct." The term can cover even accidental omissions—elsewise it would be pleonastic, because "fraud" and "misrepresentation" would likely subsume it.

*Id.* (citing *United States v. One Douglas A–26B Aircraft*, 662 F.2d 1372, 1374-75 n.6 (11th Cir. 1981) (to avoid redundancy, "misrepresentation" in Rule 60(b)(3) must encompass more than false statements made with intent to deceive)); *see Sellers v. Gen. Motors Corp.*, 40 Fed. R. Serv. 2d 590, 1984 WL 1345 (E.D. Pa.

6

1984) (ordering new trial under Rule 60(b) where non-moving party had construed discovery request narrowly, but not in bad faith); *but see Jordan v. Paccar, Inc.*, No. 95-3478, 1996 U.S. App. LEXIS 25358, at *20 (6th Cir. Sept. 17, 1996) ("the primary connotation of each of the words in Rule 60(b)(3) suggests a requirement of some odious behavior on the part of the non-moving party.").

CDI has made a sufficient factual showing under this provision to warrant relief. Defendants reply that any misrepresentation could not have been intentional, because Ribis did not personally handle the incorporation of Entertainment LLC. That contention I find unpersuasive. If Ribis didn't know the facts, it was up to him and his attorneys to ascertain them before making representations to the Court. *See Lonsdorf v. Seefeldt*, 47 F.3d 893, 895 (7th Cir. 1995) ("Fed. R. Civ. P. 60(b)(3) applies to both intentional and unintentional misrepresentations"). It is reasonable to assume that CDI relied on Ribis's representations and would have amended its complaint to include a personal liability claim against Ribis, if it had known, *i.e.*, that Entertainment LLC did not exist when the contracts were signed or thereafter.[3] Perhaps less persuasive, but of some concern, is the intermingling of funds and transfer of the lion's share of the $2.5 million, which may take on a different significance in the context of the facts about Entertainment LLC.

Modifying the judgment to impose liability, however, would be a step too far; I cannot award judgment on claims that were not pled or meaningfully explored in discovery. That is not to say, however, that I will leave CDI without recourse for conduct that appears, on the surface at least, to raise serious potential issues.

---

3   "A person is individually liable for contracts he signs under a nonexistent corporate name." *Fashion Brokerage Int'l, LLC v. Jhung Yuro Int'l LLC*, No. 10-746, 2011 U.S. Dist. LEXIS 25687, at *10 (D.N.J. Mar. 14, 2011) (granting motion to amend complaint to add individual liability claim where plaintiff was prompted to investigate defendants' corporate status "after they filed their respective Answers . . . denying that they are limited liability companies.") (citing *Fed. Advert. Corp. v. Hundertmark*, 109 N.J.L. 12, 13, 160 A. 40, 40 (1932)).

7

Instructive here is the case *Operative Plasterers & Cement Masons Int'l Assoc. Local 8 v. AGJ Const., LLC*, No. 08-6163, 2009 WL 4796764 (D.N.J. Dec. 9, 2009). In that case, the plaintiffs obtained a judgment against AGJ Construction (the "Judgment Defendant") on April 17, 2008. *Id.* at *3. Thereafter, plaintiffs filed a separate action to recover against other persons or entities (the "Non-Judgment Defendants"), on theories of "piercing the corporate veil," "alter-ego," and "single employer." *Id.* at *2. Plaintiffs contended that the Judgment Defendant had been "discontinued" without paying its obligation under the judgment. *Id.* at *3.

The *Operative Plasterers* court did not simply declare the Non-Judgment Defendants liable. It did, however, rule that the plaintiffs could seek relief by either filing a motion to amend the complaint or under Rule 60(b), rather than by pursuing a separate action. *Id.* at *12. Seeking relief under Rule 60(b), the court noted, would prevent piecemeal litigation, and avoid possible claim preclusion based on the "failure to name in a single action parties who jointly committed misconduct." *Id.* at *12-13.

I will follow the practical approach of *Operative Plasterers*. I decline to grant CDI's motion to impose additional liability in the form presented; the merits remain to be explored. I will, however, permit CDI to pursue supplemental liability. I therefore grant this Rule 60(b)(3) motion to the extent of granting CDI leave to reopen this case and amend its complaint.[4] To be clear, discovery on these amended claims will not be limited to the narrow

---

[4]   I conclude that CDI has made a sufficient showing under Rule 60(b)(3) to justify relief and, therefore, I decline to address its arguments under Rule 60(b)(2) or (b)(6). Rule 60(b)(2) applies where newly discovered evidence is "(1) material and not merely cumulative, (2) could not have been discovered prior to trial through the exercise of reasonable diligence, and (3) would probably have changed the outcome of the trial." *Bohus v. Beloff*, 950 F.2d 919, 930 (3d Cir. 1991) (citing *Stridiron v. Stridiron*, 698 F.2d 204, 207 (3d Cir. 1983); *Ulloa v. City of Phila.*, 692 F. Supp. 481, 483 (E.D. Pa. 1988)). Relief under the 60(b)(6) catchall is available only when the other subsections of Rule 60(b) do not apply. *See Stradley v. Cortez*, 518 F.2d 488, 493 (3d Cir. 1975) ("Rule 60(b)(6) is . . . available only . . . when the relief sought is based upon 'any other reason' than a reason which would warrant relief under 60(b) (1–5)") (citing *Fed. Deposit Ins. Corp. v. Alker*, 234 F.2d 113, 116-17 & n.5 (3d Cir. 1956)).

8

scope of discovery in aid of a judgment. I will permit exploration of the relevant issues.

### IV. Conclusion

For the reasons stated above, CDI's motion to modify the April 4, 2017 final judgment is granted. This matter will be reopened to allow CDI to amend its complaint.

Dated: September 25, 2018

**Kevin McNulty**
**United States District Judge**