UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| CHURCHILL DOWNS, INC., <br><br> Plaintiff, <br> vs. <br><br> NICHOLAS L. RIBIS, SR., and NLR VENTURES, LLC <br><br> Defendants. | Civil Action No. 2:14-cv-03342 (KM) (MAH) <br><br> *Document Electronically Filed* |

**MEMORANDUM OF LAW IN OPPOSITION
TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

**McELROY, DEUTSCH, MULVANEY & CARPENTER, LLP**
1300 Mt. Kemble Avenue
P.O. Box 2075
Morristown, New Jersey 07962-2075
(973) 993-8100
(973) 425-0161
*Attorneys for defendants, Nicholas L. Ribis and NLR Ventures, LLC*

Of Counsel and On the Brief:
 Joseph P. LaSala, Esq.
 William F. O'Connor, Jr., Esq.

# **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ..................................................................................1

STATEMENT OF MATERIAL FACTS.......................................................................3

STANDARD OF REVIEW ........................................................................................6

LEGAL ARGUMENT................................................................................................7

   POINT ONE: THE COURT SHOULD DENY SUMMARY JUDGMENT BECAUSE GENUINE ISSUES OF MATERIAL FACT EXIST REGARDING RIBIS'S LIABILITY AND THE AMOUNT DUE IN DAMAGES ................................................................7

      A. THE CORPORATE STATUS OF NLR ENTERTAINMENT AND NLR ACQUISITIONS PRECLUDE SUPPLEMENTAL LIABILITY ............................................7

      B. A TRIABLE ISSUE OF FACT EXISTS AS TO THE AMOUNT OF DAMAGES ALLEGEDLY DUE ..............................................................................................10

CONCLUSION.......................................................................................................12

# **TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

Anderson v. Liberty Lobby, Inc.,
    447 U.S. 242 (1986)......................................................................................................6

Berman v. Gurwicz,
    189 N.J. Super. 89 (N.J. Super. Ct. 1981)..................................................................10

Cantor v. Sunshine Greenery, Inc.,
    398 A.2d 571 (N.J. Super. Ct. App. Div. 1979)......................................................7, 9

Conway v. Samet,
    300 N.Y.S.2d 243 (N.Y. Sup. Ct. 1969) ..................................................................8, 10

Curley v. Klem,
    298 F.3d 271 (3d Cir. 2002).........................................................................................6

In re Quality Shoe Shop,
    212 F. 321 (E.D. Pa. 1914) ..........................................................................................9

K&J Clayton Holding Corp. v. Keuffel & Esser Co.,
    113 N.J. Super. 50 (App. Div. 1971) ..........................................................................9

Pharm. Sales & Consulting Corp. v. J.W.S. Delavau Co., Inc.,
    59 F. Supp. 2d 398 (D.N.J. 1999) ..............................................................................7

Rees v. Mosaic Technologies, Inc.,
    742 F.2d 765 (3d Cir. 1984)........................................................................................9

**STATUTES**

New Jersey's Business Corporation Act..........................................................................7

**RULES**

Fed. R. Civ. P. 56(a) ...........................................................................................................6

## **PRELIMINARY STATEMENT**

Defendants, Nicholas L. Ribis ("Ribis") and NLR Ventures, LLC (collectively, the "Defendants"), by and through the undersigned counsel, respectfully submit this memorandum of law in opposition to the Motion filed by plaintiff, Churchill Downs, Inc. ("CDI") for Partial Summary Judgment.

In March 2017, summary judgment was entered against NLR Entertainment, LLC based on this court's finding that NLR Entertainment had breached the parties' License and Operating Agreement when NLR Entertainment failed to acquire the Showboat Casino in Atlantic City, New Jersey and declined to return the $2.5 million wired in furtherance of the parties' business venture. The following month, this court entered a final judgment against NLR Entertainment. At no point during that litigation did CDI assert breach of contract claims against Ribis.

Three years later, and despite admittedly contracting with NLR Acquisitions, LLC, a NLR Entertainment affiliate, CDI seeks to hold Ribis personally liable for the Final Judgment. CDI urges the court to grant summary judgment on the grounds that NLR Entertainment's non-existence is automatic grounds for imposing personal liability. CDI's contentions are unavailing. First, the operative agreements underlying this litigation were initially signed on behalf of *both* NLR Entertainment and NLR Acquisitions, and later on behalf of NLR Acquisitions, by Ribis in his corporate capacity. The record demonstrates that both entities were de facto corporations at the time of execution. Moreover, NLR Acquisitions' delay in incorporating does not divest the entity from liability. Ribis did not contemplate being personally held responsible for the obligations incurred by the entity. More significantly, CDI looked to NLR for the funds and expected it to meet its obligations.

1

Moreover, CDI cannot urge for the non-existence of NLR Entertainment as the basis to impose personal liability on Ribis and in the same breathe argue the validity and binding effect of the Final Judgment. CDI cannot have it both ways. To that end, the record is littered with factual disputes as to Ribis's "personal use" of the $2.5 million. Contrary to CDI's contentions, the $2.5 million was not used for Ribis's sole benefit.

Accordingly, and as set forth more fully herein, the Court should deny CDI's motion for summary judgment.

## STATEMENT OF MATERIAL FACTS

**A.     Background of the Underlying Transaction**

During the summer of 2013, Ribis, through counsel, engaged in discussions with CDI about entering into a license agreement whereby CDI would construct, operate, and maintain an internet gaming and online gambling system for use at the Showboat Casino in Atlantic City, New Jersey once the casino was purchased by a NLR entity or affiliate. (ECF No. 96; Declaration of Nicholas L. Ribis ("Ribis Decl."), ¶ 7). The terms and conditions of the proposed transaction were initially outlined in a term sheet signed in August 2013 by CDI and Ribis on behalf of NLR Entertainment, LLC and NLR Acquisitions, LLC. (*See* Devlin Cert., Ex. 1). The purpose of the term sheet was to structure and formalize a license and operating agreement. (*Id.* at p. 1). These terms were subject to modification and additional terms were included as a result of further negotiations, and were ultimately memorialized in a license and operating agreement. (*See* Devlin Cert., Ex. 2). The License and Operating Agreement ("License Agreement") was entered into by CDI and NLR Acquisitions, LLC, and executed by Ribis in his capacity as Chief Executive Officer of NLR Acquisitions. (*See id.*; Ribis Decl., ¶ 12). The License Agreement formalized and superseded all previous agreements between the parties. (*See* Devlin Cert., Ex. 2 at p. 22, Section 19.f). At all relevant times thereto, Ribis reasonably believed that NLR Entertainment, LLC and NLR Acquisitions, LLC were duly formed limited liability companies that had been organized through his legal counsel, as he had directed. (Ribis Decl., ¶¶ 10-13). Indeed, Ribis had no reason to think otherwise. (Ribis Decl., ¶ 10). In fact, Ribis first learned that counsel never formed NLR Entertainment through CDI's motion to modify the final judgment in 2018. (Ribis Decl., ¶ 14).

**B.      The Business Expenses Incurred and Properly Paid From the $2.5 Million**

As part of the License Agreement, and pursuant to the wire instructions provided to CDI, an initial payment of $2.5 million was wired into Ribis's personal checking account held at TD Bank in August 2013. (*See* Devlin Cert., Exs. 2, 8; Ribis Decl., ¶ 17). This TD Bank account was used for both personal and business related expenses of the NLR entities during this time. (Ribis Decl., ¶ 15). Thereafter, and in furtherance of the transaction, $1.35 million of the $2.5 million was transferred into a Bancorp Bank account. (Ribis Decl., ¶¶ 16, 19). Although the Bancorp account was opened under NLR Ventures, LLC's name, it was maintained for NLR Ventures. (Ribis Decl., ¶¶ 16, 19; Devlin Cert., Ex. 5).

To that end, the $1.15 million remaining balance was used to consummate the casino acquisition and gaming and gambling venture with CDI. (Ribis Decl., ¶ 18). For instance, checks were drawn to cover expenses incurred for services provided by GHI Solutions, Inc., a gaming and hospitality consulting company, which totaled $66,791.79; consulting services provided by Manchester HR Advisors, which called for a $4,000 retainer; legal fees totaling $100,000; consulting services provided by O'Malley International in the amount of $17,013.76; services provided by Deloitte Financial Advisory, in the amount of $5,137.83; and accounting services provided by Leaf, Miele, Manganelli, Fortunato & Engel, totaling $4,721.02. (Ribis Decl., ¶ 20; Certification of William F. O'Connor, Jr. ("O'Connor Cert."), Exs. A-F).

NLR's general operational expenses incurred during Defendants' efforts to acquire the casino were also covered by the $1.15 million. (Ribis Decl., ¶ 21). For instance, $112,593.85 for payments on the office space rental; $274,922.56 in payroll; and over $130,000 in other general office expenses. (*See id.*; O'Connor Cert., Exs. G-I). Additionally, in early 2014, $15,000 was transferred from the TD Bank account into the Bancorp account for NLR Ventures. (O'Connor

Cert, Ex. J; Ribis Decl., ¶ 22). In short, majority of the $2.5 million was properly expended on business matters. (Ribis Decl., ¶¶ 18-22; O'Connor Cert., Exs. A-J).

### A. The Present Final Judgment

In the instant action, CDI seeks to hold Ribis personally liable for the $2.5 million final judgment entered against NLR Entertainment on April 4, 2017. (ECF No. 96 at pp. 13-14). The final judgment was premised upon NLR Entertainment's breach of the License Agreement. (ECF No. 71 at p. 12). Significantly, Ribis was not privy to that cause of action. (ECF No. 1). Indeed, the breach of contract claim set forth in CDI's initial complaint was only against NLR Entertainment. (*Id.*)

# **STANDARD OF REVIEW**

Summary judgment is appropriate only when the record shows "that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Anderson v. Liberty Lobby, Inc.*, 447 U.S. 242, 248-49 (1986). In resolving a summary judgment motion, the court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 447 U.S. at 251-52. In so doing, the court must consider all facts and their logical inferences in the light most favorable to the non-moving party. *Curley v. Klem*, 298 F.3d 271, 276-77 (3d Cir. 2002). The court's task is not to "weigh the evidence and determine the truth of the matter," but will determine whether a genuine dispute necessitates a trial. *Anderson*, 447 U.S. at 249. A material fact raises a "genuine" dispute "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 249-50.

# LEGAL ARGUMENT

## POINT I

**THE COURT SHOULD DENY SUMMARY JUDGMENT BECAUSE GENUINE ISSUES OF MATERIAL FACT EXIST REGARDING RIBIS'S LIABILITY AND THE AMOUNT DUE IN DAMAGES.**

The record before this Court is rife with disputed material facts rendering summary judgment inappropriate. As such, CDI's motion for partial summary judgment should be denied.

**A.  The Corporate Status of NLR Entertainment and NLR Acquisitions Preclude Supplemental Liability**

CDI avers that Ribis is personally liable for the Final Judgment because he contracted with CDI on behalf of NLR Entertainment, a non-existent entity. (*See* Pl.'s Br. Supp. Partial Summ. J, ECF No. 110-2). CDI's contention is belied by the record.

At the outset, Ribis signed the term sheet on behalf of *both* NLR Entertainment and NLR Acquisitions. (Ribis Decl., ¶ 12; Devlin Cert., Ex. 1). The record demonstrates that both entities were de facto limited liability companies at the time of execution. A court may treat a company as a de facto corporation notwithstanding the absence of formal organization if there is a bona fide attempt to organize the corporation and there was an actual exercise of the corporate powers.[1] *Cantor v. Sunshine Greenery, Inc.*, 398 A.2d 571 (N.J. Super. Ct. App. Div. 1979). Here, Ribis was not the incorporator of the entities. Rather, Ribis understood that his attorneys at that time would handle the corporate formation. (Ribis Decl., ¶ 11). Given that the discussions with CDI concerning the operative license agreement began in July 2013, and his counsel had already been retained by then and was responsible for the formation, Ribis had no reason to think

---

[1] Defendants note that this District has questioned whether this doctrine still exists following the enactment of New Jersey's Business Corporation Act on one prior occasion. *See Pharm. Sales & Consulting Corp. v. J.W.S. Delavau Co., Inc.*, 59 F. Supp. 2d 398, 402 (D.N.J. 1999).

that NLR Entertainment and NLR Acquisitions were not formed by the time the term sheet was signed in August 2013 and the formal license agreement in September 2013. (Ribis Decl., ¶¶ 10-13). Indeed, Ribis had no reason to question the viability of the entities provided for in the agreement drafted by his attorneys. (Ribis Decl., ¶ 12). As such, it was not unreasonable for Ribis to rely upon his attorneys to handle the formalities and to believe that the entities were formed. In its motion, CDI also cites to *Conway v. Samet*, 300 N.Y.S.2d 243 (N.Y. Sup. Ct. 1969) as additional support of its position that personal liability must be imposed even when it is argued that an attorney was engaged to incorporate the company. (Pl.'s Br., ECF No. 110-2, p. 11). However, *Conway* is distinguishable from the instant matter as it did not consider the "exercise of power" element as required in determining whether de facto corporation status was reached and therefore has minimal application here.

To that end, the parties carried on as though corporate formalities had been observed. The terms and conditions of the proposed transaction were discussed and set forth in the term sheet. (Devlin Cert., Ex. 1). These terms were further negotiated and subject to modifications and additions, and ultimately formalized in a license agreement. (Devlin Cert., Ex. 2). Moreover, services were requested and companies were consulted in furtherance of consummating the transaction. (*See, e.g.,* Ribis Decl., ¶¶ 19, 20). As such, there was an actual exercise of corporate powers by NLR Entertainment and NLR Acquisitions. Based on these facts, a rational factfinder could conclude that de facto corporate status applies.

More critically, CDI understood that it was dealing with a corporate entity and not with Ribis individually. CDI knew that the License Agreement (and term sheet) was not signed by Ribis individually, rather on behalf of the entity. (Devlin Cert., Ex. 2). Indeed, the signature page of the License Agreement provided for the signor's title designation. (*See id.*) To that end,

although the $2.5 million was wired to the TD Bank account held in Ribis's name, and evident in the wiring instructions provided, CDI still looked to NLR for the obligation and expected that it be held responsible for the funds advanced as ratified in the execution of the License Agreement. Effectively, NLR Entertainment and NLR Acquisitions resulted in a limited liability company by estoppel with the consent of CDI. As such, CDI should be estopped from denying its incorporation to impose liability on Ribis. *See Cantor*, 398 A.2d at 415 ("Plaintiffs in effect are estopped from attacking the legal existence of the corporation collaterally because of the nonfiling in order to impose liability on the individual when they have admittedly contracted with a corporate entity.").

  CDI's argument also fails because NLR Acquisitions' pre-incorporation activities do not divest its contractual liabilities. *See Rees v. Mosaic Technologies, Inc.*, 742 F.2d 765, 768-69 (3d Cir. 1984) (finding that "the pre-incorporation activities of a promoter may form the basis for corporate liability when they have been ratified by post-incorporation acts of the corporation"). In New Jersey, a corporation is entitled to all the rights, and assumes full liability, under a pre-incorporation contract made by its agent ("promoter") on its behalf once it comes into existence. *See K&J Clayton Holding Corp. v. Keuffel & Esser Co.*, 113 N.J. Super. 50 (App. Div. 1971); *see, e.g., In re Quality Shoe Shop*, 212 F. 321, 324 (E.D. Pa. 1914) (holding that a promoter, acting as an agent of the corporation on the verge of being formed, no doubt intended to bind the corporation, and was therefore acting in its behalf). Here, Ribis never anticipated personal liability in this matter as evidenced by his desire to form a limited liability company and by signing the operative agreements in his corporate capacity. (Ribis Decl., ¶ 12). Further, NLR Acquisitions concomitantly with its incorporation, caused to be executed a "Written Consent" whereby it "approved and ratified as the true acts and deeds of the Company with the same force

and effect as if each such act, . . . agreement . . . had been specifically authorized in advance by the Managing Member." (O'Connor Cert., Ex. K). *See Berman v. Gurwicz*, 189 N.J. Super. 89 (N.J. Super. Ct. 1981) ("The adoption of a pre-incorporation agreement may be evidenced by action of the corporation after it is formed; it need not be accomplished by a formal resolution of the board of directors"). Accordingly, a fact finder could conclude that Ribis was simply acting as an agent and NLR adopted the agreement thereby assuming the CDI liability. As such, summary judgment should be denied.

CDI's contention that Ribis repeatedly misrepresented that NLR Entertainment was a Delaware limited liability company thereby warranting liability is a red herring. Ribis made no such misrepresentations. Throughout the underlying transaction and up until CDI's motion to modify the judgment in 2018, Ribis believed that his attorneys had incorporated NLR Entertainment. (Ribis Decl., ¶¶ 8-14). Such reliance does not amount to a misrepresentation. CDI's attempts to distort the factual record to serve its own interests should not be countenanced.

**B.     A Triable Issue of Fact Exists as to the Amount of Damages Allegedly Due**

Notwithstanding, summary judgment is precluded because there is a clear triable issue of fact regarding the amount due in damages.

CDI seeks to enforce the Final Judgment obtained against NLR Entertainment, a nonexistent entity, in the amount of $2.5 million. CDI cannot urge the non-existence of NLR Entertainment as the basis to impose personal liability on Ribis and in the same breathe argue the validity and binding effect of the final judgment. *See, e.g., Conway v. Samet*, 300 N.Y.S.2d 243 (N.Y. Sup. Ct. 1969). CDI cannot have it both ways. To that end, and contrary to CDI's contentions, Ribis was not privy to the cause of action underlying the entry of the Final Judgment. Indeed, the Final Judgment was entered on CDI's breach of contract claim against

NLR Entertainment, *not* Ribis. As such, the judgment was obtained against a non-existent entity. Since the entity was non-existent, the Court obtained jurisdiction over no one and its judgment determined nothing.

Significantly, CDI makes much about Ribis's "personal" use of the $2.5 million. The record, however, demonstrates that majority of the $2.5 million was used for operational or business related expenses. Shortly after the $2.5 million wire transfer, Ribis caused to be transferred $1.35 million into a Bancorp Bank account maintained for the NLR entities. (Ribis Decl., ¶ 19). The remaining $1.15 million was used in Ribis's efforts to consummate the casino acquisition. (Ribis Decl., ¶¶ 15-21). Indeed, checks were drawn to cover expenses incurred for services provided by GHI Solutions, Inc., a gaming and hospitality consulting company, which totaled $66,791.79; consulting services provided by Manchester HR Advisors, which called for a $4,000 retainer; legal fees totaling $220,000; consulting services provided by O'Malley International in the amount of $17,013.76; services provided by Deloitte Financial Advisory, in the amount of $5,137.83; and accounting services, totaling $4,721.02. (Ribis Decl., ¶ 20; Certification of William F. O'Connor, Jr. ("O'Connor, Cert."), Exs. A-F).

NLR's operational expenses incurred during Defendants' efforts to acquire the casino were also paid out of the $1.15 million. (Ribis Decl., ¶ 21). For instance, checks totaling $112,593.85 were made for payments on the office space rental; $274,922.56 was expended in payroll; and over $130,000 in other general office expenses. (Ribis Decl., ¶ 21; O'Connor Cert., Exs. G-J). Additionally, in early 2014, $15,000 was transferred from the TD Bank account into the Bancorp account for NLR Ventures. (Ribis Decl., ¶ 22; O'Connor Cert., Ex. K).

In short, there is a material dispute as to CDI's entitlement to the full $2.5 million. Accordingly, summary judgment should be precluded.

## **CONCLUSION**

For the foregoing reasons, the court should deny plaintiff, Churchill Downs, Inc.'s motion for partial summary judgment.

                            Respectfully submitted,

By:    <u>s/ *William F. O'Connor, Jr.*</u>
         William F. O'Connor, Jr.
         **McElroy, Deutsch, Mulvaney & Carpenter LLP**
         1300 Mt Kemble Ave
         Morristown, N.J. 07962

Dated: June 1, 2020